UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| KIMBERLY ANN COFFIN, | ) | |
| --- | --- | --- |
| Plaintiff | ) | |
| v. | ) | No. 2:17-cv-00176-DBH |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a medication technician. The plaintiff seeks remand on the bases that the ALJ erred in evaluating (i) the severity of her migraines, (ii) regardless of severity, the functional effects of her migraines and other impairments, and (iii) the opinion of her treating physician, Michael Makaretz, M.D. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 13) at 1-12. I find no error, and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Act through December 31, 2017, Finding 1, Record at 21; that she had a severe impairment of vertigo, Finding 3, *id*. at 22; that she had the residual functional capacity ("RFC") to perform work at all exertional levels involving occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, occasional balancing, stooping, kneeling, and crouching, no crawling, and avoidance of hazardous machinery and heights, Finding 5, *id*. at 24; that she was capable of performing past relevant work as a medication technician, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 28; that, in the alternative, considering her age (26 years old, defined as a younger individual, on her alleged disability onset date, August, 18, 2012), education (at least high school), work experience (transferable skills), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id*. at 28-29; and that she, therefore, had not been disabled from August 18, 2012, through the date of the decision, March 28, 2016, Finding 7, *id*. at 29-30. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f),

416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Failure To Find a Severe Migraine Impairment

The plaintiff first contends that the ALJ committed reversible error in failing to find that her migraines constituted a severe impairment. *See* Statement of Errors at 1-2. As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 18) at 2-5, that finding is supported by substantial evidence and, in any event, the plaintiff has failed to demonstrate that any error was harmful.

The ALJ stated that he found the plaintiff's migraine impairment nonsevere, explaining:

> Treatment notes show periodic headaches, which appear to be related to [the plaintiff's] symptoms of dizziness. There are few references to migraines made in the record. There are no MRIs or CT scans to demonstrate a basis for migraines. The [plaintiff] has not required . . . treatment specific to migraines such as Botox injections. There are no[] objective findings to substantiate the frequency, duration, and severity of migraines to warrant any functional limitations.

Record at 22 (citations omitted).

The ALJ also relied on the opinions of agency nonexamining consultants, explaining that, "particularly in the instant case," there was "consistent medical evidence to reach similar conclusions[.]" *Id*. at 27. He noted, for example, that the plaintiff had responded well to treatment and remained highly functional. *See id.*[2] Two of those agency nonexamining consultants, J.H. Hall, M.D., in a September 13, 2013, initial review of a prior SSD claim alleging the same onset date of disability, and Richard T. Chamberlin, M.D., in a January 23, 2015, reconsideration review of the instant SSD and SSI claims, concluded that, while the plaintiff had a severe vertigo

---

[2] Earlier in his decision, the ALJ had noted that the plaintiff was able to care for her personal needs, prepare meals, do household chores, including laundry, and online grocery shopping, drive short distances, care for pets, pay her bills, manage her finances, watch television, read, color, knit, take walks, and take care of her four small children, including helping them dress, taking them to preschool, and feeding them. *See* Record at 23.

impairment, her migraines were nonsevere. *See id*. at 65, 69-71, 109, 114-17. Dr. Hall noted, "The migraines do not seem very limiting currently, and she has not actually been consistently treated due to pregnancies." *Id*. at 71. Both Drs. Hall and Chamberlin assessed functional limitations stemming from the plaintiff's vertigo symptoms. *See id*. at 70-71, 116-17.[3]

The plaintiff challenges the finding of nonseverity on the bases that the ALJ (i) erroneously stated that there were "few references" to migraines when that impairment was "the focus of the relevant medical records" and (ii) "relied on his lay knowledge, and not medical evidence, to determine the diagnostic and treatment standards for migraines." Statement of Errors at 2 (citation and internal quotation marks omitted). With respect to the second point, she elaborates that (i) there is no evidence that Botox injections were recommended to her, (ii) she was prescribed other medication, and (iii) "it is unclear why the ALJ was requiring a specific name-brand medication as a litmus test for severity." *Id*. at 2 n.1.

These points are unavailing. Regardless of the number of references in the record to migraines, the ALJ relied at least in part on the opinions of Drs. Hall and Chamberlin, not his lay knowledge, to find that condition nonsevere. Plainly, he mentioned Botox by way of example and not as a definitive "litmus test for severity." *Id*.

At oral argument, the plaintiff's counsel contended that the ALJ's reliance on the opinions of the agency nonexamining consultants was misplaced because they did not have the benefit of review of records from Dr. Makaretz's practice for the period from January 2015 through October 2015, Record at 978-98, which he posited were the records most relevant to the Makaretz opinion.

---

[3] At oral argument, the plaintiff's counsel correctly noted that, on initial review of the current claims, his client's physical impairments were assessed by a non-medical "SDM," or Single Decision Maker. *See* Record at 80-82. No weight properly could have been given to a medical opinion of a non-medical source. However, nothing turns on the existence of the SDM opinion in this case.

He further noted that the ALJ summarized the plaintiff's treatment records only through August 25, 2014. *See id*. at 26.

As a threshold matter, the plaintiff did not challenge the ALJ's decision on this basis in her statement of errors, *see generally* Statement of Errors, thereby waiving that point, *see, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

In any event, even if the argument had been timely raised, it is without merit. The ALJ pointedly addressed the evidence unseen by Drs. Hall and Chamberlin, stating:

> The undersigned acknowledges that there is medical evidence of record that was not reviewed by the state agency doctors. The undersigned has carefully reviewed and considered this evidence and finds that it is generally consistent with the evidence that was reviewed by the state agency doctors. There is no indication from these records that the [plaintiff] has any additional functional limitations that have not already been assessed in the [RFC] as found herein. Accordingly, the undersigned finds that this additional evidence does not warrant a change to the weight given to the state agency doctors as noted above.

*Id*. at 27. In so doing, he fairly characterized the 2015 evidence, which indicated that the plaintiff's chief complaint continued to be dizziness, whether caused by her vertigo, migraines with vertigo, or both, and that her symptoms improved with treatment. *See id*. at 978, 981, 984, 987, 990, 996.

The ALJ, accordingly, did not err in deeming the plaintiff's migraines nonsevere. In any event, even if he had, the plaintiff has fallen short of demonstrating that any such error was harmful. In this district, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the

6

outcome of the plaintiff's claim." *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).

In a section of her statement of errors titled, "Longitudinal Medical Evidence shows a substantial impact on functioning from migraines, especially when combined with other impairments[,]" the plaintiff summarizes medical evidence for the period from October 17, 2012, through October 6, 2015. Statement of Errors at 3-8. Yet, as the commissioner notes, *see* Opposition at 4, she fails to identify specific functional limitations that were omitted, *see* Statement of Errors at 3-8.

In a subsequent section of her statement of errors titled, "The ALJ's decision does not consider the symptoms of migraines[,]" the plaintiff asserts that the ALJ took into account only her vertigo symptoms, failing to mention pain, photosensitivity, sound sensitivity, and concentration difficulties caused by her migraines. *Id*. at 8. Yet, again, she describes symptoms rather than functional limitations.[4] As the commissioner correctly notes, "the ALJ specifically adopted functional limitations to address Plaintiff's severe dizziness by establishing environmental and postural limitations . . . and Plaintiff fails to identify any further limitations necessitated by her migraine symptoms." Opposition at 5 (citing Record at 26).

This would have been fatal to her bid for remand even had she shown that the ALJ erred in deeming her migraine impairment nonsevere. *See, e.g., Carlton v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00463-GZS, 2011 WL 4433660, at *5 (D. Me. Sept. 21, 2011) (rec. dec., *aff'd* Oct.

---

[4] The plaintiff does quote the following portion of the Makaretz opinion in support of this argument: "This patient has migraine associated vertigo. She is extremely sensitive to light and sound. She is easily overwhelmed in visually busy environments and crowds of people. She cannot tolerate watching a computer screen. She suffers from spells of vertigo multiple times a day. Her symptoms are random and unpredictable and often lead to nausea and vomiting." Statement of Errors at 8 (quoting Record at 1005). This passage, as well, focuses on symptoms. However, to the extent that it suggests that the plaintiff had functional limitations, such as limitations in dealing with visually busy environments, crowds, and computer use, the ALJ supportably gave the opinion diminished weight for the reasons discussed below.

12, 2011) (it was claimant's "burden to supply the medical evidence needed to establish her impairments and the degree to which they limit[ed] her functional capacity").

### B. Failure To Capture Functional Limitations from Combined Impairments

The plaintiff next complains that, regardless of whether her migraine impairment was properly found nonsevere, the ALJ failed to consider the combined effect of all of her severe and nonsevere impairments – vertigo, migraines, and anxiety. *See* Statement of Errors at 9-10; *see also, e.g.*, 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your [RFC].") (citations omitted). She points out that both Dr. Makaretz and her treating physical therapist Paul Albert, who worked with Dr. Makaretz, noted that her vertigo and migraines had a combined effect and that her anxiety exacerbated her symptoms. *See* Statement of Errors at 9.

She analogizes this case to *Dunn v. Colvin*, Civil Action No. 15-cv-13390, 2016 WL 4435079 (D. Mass. Aug. 19, 2016), in which the United States District Court for the District of Massachusetts found remand warranted in part because "[t]here [was] no indication the ALJ considered the cumulative effect of [the claimant's] severe and non-severe impairments, including [her] migraines, and thus the ALJ decision was not in accordance with [Social Security Ruling ("SSR")] 96-8p." *Id.* at 10 (quoting *Dunn*, 2016 WL 4435079, at *12).

In this case, unlike in *Dunn*, the ALJ adequately considered the impact of the plaintiff's nonsevere migraine and anxiety impairments. He specifically acknowledged his duty to "consider all of [the plaintiff's] impairments, including impairments that are not severe[,]" when determining her RFC. Record at 21 (citations omitted). At Step 2, he noted that "[t]here [was] an additional question of disability due to migraines and anxiety[,]" but found that "the medical evidence of

8

record does not support that these impairments cause more than slight functional limitations that interfere with the [plaintiff's] ability to perform basic work-related activities." *Id*. at 22.

The ALJ directly addressed not only the plaintiff's migraines, as discussed above, but also her anxiety and ability to concentrate. He acknowledged that the plaintiff reported that she experienced anxiety, "in part secondary to [her] medical condition and [the] situational stress of caring for four young children." *Id*. (citations omitted). However, he observed that "ongoing treatment notes show[ed] a normal mental status, with normal mood, normal affect, normal attention span, normal concentration, logical thought process and clear and articulate conversation[,]" and that the plaintiff had recently undergone "a detailed psychiatric examination wherein the mental status was benign." *Id.* (citation omitted). He concluded, "Simply, there is nothing in this record to suggest that the [plaintiff] has a mental illness that limits her ability to work." *Id*. He also acknowledged that the plaintiff reported migraine-related concentration difficulties but found that she had only mild limitations in that area, noting that, although she had reported that her ability to concentrate varied depending on her medical condition, she was able to engage in a wide range of activities. *See id*. at 23.

Finally, even assuming error, the plaintiff again fails to demonstrate how any such error resulted in the omission of specific functional limitations from the ALJ's RFC finding.

Remand, accordingly, is unwarranted on the basis of this point of error.

### C. Discounting of Makaretz Opinion

The plaintiff finally contends that the ALJ erred in his consideration of the opinion of Dr. Makaretz. *See* Statement of Errors at 10-12. On February 2, 2016, Dr. Makaretz completed a Physical Impairment Medical Source Statement; at the time, he had been treating the plaintiff since January 2013. *See* Record at 26, 1001. Dr. Makaretz noted that the plaintiff had been diagnosed

9

with benign positional vertigo and migraine variant and that her prognosis was fair. *See id*. at 1001. He indicated, *inter alia*, that she could sit for about two hours, and stand/walk for less than two hours, in an eight-hour workday, would need to alternate positions and take unscheduled breaks, could occasionally lift and carry up to 10 pounds, and would likely miss more than four days of work per month. *See id*. at 1003-05.

When asked to describe any other limitations that would affect the plaintiff's ability to work, Dr. Makaretz stated:

> This patient has migraine assoc[iated] vertigo. She is extremely sensitive to light and sound. She is easily overwhelmed in visually busy environments and crowds of people. She cannot tolerate watching a computer screen. She suffers from spells of vertigo multiple times per day. Her symptoms are random [and] unpredictable and often lead to nausea [and] vomiting.

*Id*. at 1005.

The ALJ stated that, while controlling weight ordinarily is given to the opinion of a treating physician commenting on a claimant's abilities, he found the Makaretz opinion "conclusory and against the weight of the record as a whole." *Id*. at 26. He explained:

> The conclusions reached in the questionnaire are not supported by medically acceptable signs, symptoms, and/or laboratory findings. A review of the exhibit file fails to identify any subjective or objective medical findings supporting these conclusions[,] and [the plaintiff's] activity level is inconsistent with these findings. There are no references in the medical evidence of record to [the plaintiff's] inability to sit for only two hours and no references to a need to alternate positions. As such, the questionnaire is accorded diminished evidentiary weight.

*Id*. (citation omitted).

The plaintiff asserts that the ALJ failed to provide good reasons for discounting Dr. Makaretz's opinion both because the reasons given were unsupported by substantial evidence and because he failed to "weigh the appropriate factors, including Dr. Makaretz's specialty, his long-

term treatment relationship with Plaintiff, or the consistency of [his] opinion with the routine complaints and treatment of Plaintiff." Statement of Errors at 11.

On the first point, she contends that the Makaretz opinion was detailed rather than conclusory and supported by clinical signs and objective findings, including Dr. Makaretz's notation of "'nystogos [sic][5] consistent with positional vertigo which has been responsive to treatment'" and citation to abnormal VNG [videonystagmography] testing." *Id.* (quoting Record at 1001). She further asserts that Dr. Makaretz's opinion was supported by the regular vestibular testing performed by physical therapist Albert, as well as subjective evidence in the form of her ongoing complaints of headaches and dizzy spells. *See id.*

Contrary to the plaintiff's contentions, however, the ALJ did supply good reasons for according diminished weight to Dr. Makaretz's opinion. As the commissioner argues, "the ALJ appropriately considered the supportability of the opinion and its consistency with the record[,]" two of the factors listed in the regulations as "applicable to assessing a medical opinion." Opposition at 8 (citing 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4)). In turn, "lack of support and inconsistency with other substantial evidence of record are well-recognized bases for affording a treating source's medical opinion little or no weight." *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan 2. 2018).

Further, the ALJ's findings were supported by substantial evidence. The Makaretz opinion fairly can be said to have been inconsistent with other evidence of record, including the Hall and Chamberlin opinions, c*ompare* Record at 69-71, 114-17 *with id.* at 1001-05, and the plaintiff's wide range of activities, *see id.* at 23. The Makaretz opinion also fairly can be characterized as having lacked objective support. As the commissioner points out, *see* Opposition at 9, Dr.

---

[5] Dr. Makaretz wrote the plaintiff had "*nystagmus* consistent with positional vertigo." Record at 1001 (emphasis added).

Makaretz himself indicated that the plaintiff had no pain, that her condition had been responsive to treatment, and that some earlier testing had been negative, *see* Record at 1001.[6]

While the plaintiff lists other factors that the ALJ might have considered, *see* Statement of Errors at 10-11, an ALJ is not obliged to mechanically recite every relevant factor set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when weighing opinion evidence. *See, e.g.*, *Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

Remand, accordingly, is also unwarranted on the basis of this point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 2nd day of March, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] Specifically, in response to a question asking him to identify clinical findings and objective signs, Dr. Makaretz stated that the plaintiff "has had nystagmus consistent with positional vertigo which has been responsive to treatment[,]" that "VNG has suggested positional labyrinthine dysfunction in the past[,]" and that a past MRI and head CT scan had been negative (as indicated by a minus sign in a circle). Record at 1001.